[662 NYS2d 761]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANTHONY LESLIE, Appellant.

First Department, September 25, 1997

## APPEARANCES OF COUNSEL

*Kathleen E. Fay* of counsel *(Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York City, attorney), for respondent.

*Lynne F. Stewart,* New York City *(Jonathan D. Libby* on the brief), for appellant.

## OPINION OF THE COURT

WILLIAMS, J.

The principal issue presented by this appeal is whether defendant's right to counsel and/or his right to effective assistance of counsel was denied when he was jointly represented in a criminal proceeding by a layman posing as an attorney and a bona fide attorney appearing pro hac vice on the motion of the impostor.

This appeal arises from an incident that occurred at approximately 11:00 P.M. on November 17, 1987, at Broadway between 159th and 160th Streets in New York County. Two police officers, John Negus and Donald Drogin, on plainclothes duty in an unmarked police car, observed a Suzuki Samarai, a Jeep-style vehicle, with tinted windows and out-of-State license plates slowly circling the block. At least two persons were observed in the vehicle. Several times the driver pulled over to the curb and pedestrians approached and looked into the car then walked away quickly, looking over their shoulders. After 5 to 10 minutes, when the officers observed the driver double-park at 159th Street and yet another pedestrian walk up to the vehicle, they pulled up within six feet of the vehicle and activated a red dashboard light. The pedestrian, seeing the police car, ran away looking back over his shoulder.

The officers approached the vehicle, with Officer Negus on the driver side, and Officer Drogin on the passenger side. Officer Negus identified himself as a police officer and directed defendant, the driver, to turn off the motor. Defendant hesitated, glancing around, then complied. Negus then asked defendant to produce his license and registration, and, in response, defendant pulled his jacket across the front of his body.

Simultaneously, the officers noted the passenger's "very fidgety" behavior. Officer Drogin stated aloud that there was "something wrong", and called for backup.

The officers ordered the two out of the vehicle and defendant and passenger complied. However, defendant turned his back to Officer Negus, moved his hands toward his waistband and again pulled his jacket across the front of his body. When Officer Negus asked defendant to step to the rear of the vehicle, he did so, keeping his back toward Officer Negus and again moving his hands to his waistband. Officer Negus directed defendant to keep his hands away from his waistband and he complied, but the officer noticed that defendant's hand drifted back to his waistband. Now fearing for his safety, Officer Negus reached around defendant and felt what appeared to be the handle of a gun on the left side of defendant's waistband.

Defendant spun around and elbowed Officer Negus to the head, knocking him backwards. Defendant then pointed a black gun with a white handle at Officer Drogin, who was about six feet away on the other side of the vehicle with the passenger. Officer Negus shouted a warning and Officer Drogin pushed the passenger down onto the hood of the vehicle, ducked, and drew his own weapon. As this was happening, defendant pointed his gun at Officer Negus' head, "very close" to his ear. Officer Negus ducked and heard a "loud metallic click" but defendant's gun did not discharge. Officer Negus shoved defendant back against the vehicle and either the gun flew out of defendant's hand, or he threw it, and it hit the wall of a nearby building. Defendant was subdued and handcuffed after a struggle with Officer Negus and two backup officers.

Officer Negus recovered a black .38 caliber Colt revolver with a white handle from the basement entrance to the nearby building, one step down from street level. The gun contained six rounds, including some hollow-point rounds, and the hammer was not cocked. The bullet under the hammer was a hollow-point and the bullet's primer had a shallow indentation.

Just after a pretrial omnibus motion was filed on behalf of defendant by the court-appointed counsel who had represented him to that point, he retained Terrence Green, who represented himself as an attorney duly admitted to practice in New York, but who in fact had never attended law school. Green, in turn, sponsored the pro hac vice admission of Blaine White, an attorney duly admitted in Pennsylvania and the District of Columbia, to represent defendant on this matter. During the

course of proceedings, the two jointly filed a motion to suppress physical evidence, but subsequently White handled the bulk of the work, including the presentation of the opening and closing arguments, the cross-examination of the officers present at the crime scene, the posing of defense objections and the preparation of requests to charge, and was actually present at all stages of the trial. Green, however, conducted the cross-examination of the People's ballistics expert and the direct examination of defendant's sole witness, his ballistics expert.

Two years after defendant's jury conviction on the charges herein, and as a result of a complaint filed against Green with this Department's Disciplinary Committee, Green's deception was uncovered. Subsequently, defendant made an application pursuant to CPL 440.10 seeking to vacate his judgment of conviction on US Constitution Sixth Amendment grounds.

The trial court denied the application, rejecting the approach urged by defendant that the presence of the impostor constituted a per se violation of the rights to counsel and effective assistance of counsel, and instead proceeded to examine the specific circumstances so as to determine whether any violation occurred (154 Misc 2d 325). The court concluded, citing *People v Winkler* (71 NY2d 592), that defendant failed to meet his burden of demonstrating that a conflict of interest was created by the participation of the impostor and that such conflict of interest "affected the defense in such a way, based on all relevant aspects of the representation directly or indirectly rooted in that impediment, that meaningful representation was not supplied under the Federal and State Constitutions" (*People v Winkler*, at 597).

The general rule is that "[w]here a defendant in a criminal proceeding has unwittingly been represented by a layman masquerading as an attorney but in fact not licensed to practice law, his conviction must be set aside without regard to whether he was individually prejudiced by such representation" (*People v Felder*, 47 NY2d 287, 291). The rationale for this rule is not only the obvious violation of the right to a duly educated and licensed attorney, but also the danger to the right of effective assistance of counsel posed by the impostor's conflict of interest—he cannot be too zealous in representing defendant due to his fear that his zeal might trigger an inquiry that would disclose his fraud.

However, in the unique situation before us here, where defendant is represented by two attorneys, one an impostor and the other duly admitted and in good standing, the two courts that have addressed the issue have taken a different approach.

In *Higgins v Parker* (354 Mo 888, 191 SW2d 668 [1945], *cert denied* 327 US 801 [1946]), a duly licensed lawyer worked with the imposter who was a layman with "a forged certificate" and who had never been admitted to practice in any State. The court found that the right to counsel under the US and Missouri Constitutions "means a duly licensed lawyer" (*supra,* 354 Mo, at 891, 191 SW2d, at 670); that the record showed that the legitimate attorney "participated in [defendant's] defense throughout" (*supra,* 354 Mo, at 892, 191 SW2d, at 671) the proceedings; and concluded that the facts, including the presence of the legitimate counsel, did not sufficiently support defendant's claim that the incompetence of the impostor denied him "his constitutional right to a fair trial" (*supra,* 354 Mo 892, 191 SW2d, at 671).

In *United States v Novak* (903 F2d 883 [2d Cir 1990]), one of the defendant's two attorneys was discovered, subsequent to his representation of defendant, to have obtained his license to practice law by fraudulent misrepresentation and was disbarred. This attorney conducted defendant's trial, while the second, duly licensed attorney was largely absent from the trial. The court relied on its reasoning in a prior decision, *Solina v United States* (709 F2d 160),. that whether or not a defect in an attorney's licensure amounted to a denial of a criminal defendant's right to counsel depends on whether such defect was merely technical or substantive. The court held the defect to be a substantive one,* "stemming from a fraud that both prevented the state from assessing legal ability and revealed a want of moral character" (*United States v Novak, supra,* at 890), thus the first attorney's representation did not satisfy defendant's Sixth Amendment right. The court also held that even where an ersatz attorney had participated in a defendant's defense, if a second, duly licensed attorney participated as co-counsel and provided representation at all critical stages of the proceeding, a defendant's Sixth Amendment rights would not be violated. Upon review of the record, the court found that since the licensed attorney was absent for most of the trial and did not actively participate, defendant had been denied effective assistance of counsel at all critical stages of the proceed-

---

* In *Novak*, the impostor was the infamous domestic abuser, Joel Steinberg, who had been admitted to the New York Bar by fraudulently obtaining a certificate of dispensation, a procedure by which applicants meeting certain other requirements were exempted from the Bar examination if their legal education had been interrupted by at least 12 months of active military service. Steinberg falsely represented that he had met the requirement of successful completion of two thirds of the course work for a law degree.

ings and therefore vacatur of defendant's conviction was mandated.

In sum, the courts that have considered circumstances similar to those at bar have held essentially that the mere presence of an impostor does not require per se that a defendant's conviction be vacated, that a defendant must demonstrate that such imposture denied him effective assistance of counsel and that no violation of the Sixth Amendment right occurs where the legitimate attorney provides effective assistance at all critical stages of the proceedings.

Returning to the matter before us, we agree with the trial court that defendant failed to meet his "high burden" of demonstrating that Green's presence and participation, and/or White's incompetence, denied defendant effective assistance of counsel under these circumstances and deprived him of a fair trial (*People v Hobot*, 84 NY2d 1021, 1022). Defendant failed to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v Washington*, 466 US 668, 694; *People v Castellano*, 203 AD2d 116, *lv denied* 83 NY2d 965; *People v Nix*, 173 AD2d 285, 287, *lv denied* 78 NY2d 971). As the trial court pointed out, White was present in the courtroom at all times seeking to protect his client's interests; the defense team considered White its lead counsel; defendant failed to "allege any disagreement between White and Green as to defense strategy"; and White conducted every critical phase of the trial, except for that related to the ballistics evidence, which we too find to have been "equivocal and nonincriminatory".

In fact, we go further and assert that the record indicates that White represented defendant quite ably under the circumstances. The defense consistently argued the evidence in an artful, cogent manner, taking advantage of weaknesses in the People's case, obscuring weaknesses in its own and demonstrating astute forbearance where appropriate.

Defendant also claims that he was denied effective assistance of counsel since White, admitted pro hac vice, was not authorized to participate in pretrial motion practice, citing a Third Department case, *Largeteau v Smith* (197 AD2d 832, 833), which held that pro hac vice admission of an out-of-State attorney is limited strictly to the " 'trial or argument of any particular cause' ". We find more persuasive the more recent position taken by the Fourth Department and adopted in the revised regulation governing pro hac vice admissions (22

NYCRR 520.11 [a] [1]). In *Johnson v Mesch Eng'g* (212 AD2d 970), the Fourth Department specifically declined to follow the Third Department rule and held that the pro hac vice admission rule "should be read to encompass admission for matters of trial preparation, including pretrial discovery". Similarly, 22 NYCRR 520.11 (a) (1) now provides that an out-of-State attorney in good standing may be admitted pro hac vice "in the discretion of any court of record, to participate in any matter in which the attorney is employed".

Defendant's claim that several of the prosecutor's comments during summation deprived him of a fair trial and demonstrate that he was denied effective assistance of counsel, to the extent that objections were not posed, is without merit. In each instance, the remarks represented either fair comment on the evidence, acceptable summation rhetoric, or a minor misstatement of testimony not reasonably likely to create undue prejudice to defendant. By no means did such comments approach the level of egregiousness and pervasiveness sufficient to deny defendant a fair trial (*see, People v D'Alessandro*, 184 AD2d 114, *lv denied* 81 NY2d 884).

Defendant's claim of error on the part of the trial court in revising its ruling and admitting evidence that allegedly could only serve to raise an inference of his involvement in uncharged criminal activity is also without merit. The court allowed the evidence, which consisted of the fact that an expensive watch and approximately $4,000 was recovered from defendant postarrest and then returned to him, on redirect examination of Officer Drogin as relevant to credibility issues raised by defendant regarding the honesty of the police officers. This was an appropriate exercise of discretion (*People v Jackson*, 173 AD2d 292, *lv denied* 78 NY2d 968) and an alteration of the order of proof in furtherance of justice (*see, People v Washington*, 71 NY2d 916; *People v Olsen*, 34 NY2d 349).

Defendant's remaining arguments include various claims of specific attorney error that purportedly demonstrate ineffective representation by White; a purported claim that the evidence was not legally sufficient to support the jury's verdict, which in reality challenges the weight of the evidence; and a claim that the sentence was excessive and should be reduced in the interests of justice. Upon review, we find each of these claims to be meritless.

Accordingly, the judgment of Supreme Court, New York County (Harold Rothwax, J.), rendered June 29, 1988, convict-

ing defendant, after a jury trial, of attempted murder in the first degree, and sentencing him to a term of 25 years to life, and the order of the same court and Justice, entered on or about April 22, 1992, denying defendant's motion to vacate the aforementioned judgment on the ground that his Sixth Amendment rights were violated, should be affirmed.

SULLIVAN, J. P., ROSENBERGER, ELLERIN and COLABELLA, JJ., concur.

Judgment, Supreme Court, New York County, rendered on or about June 29, 1988, and order, same court and Justice, entered on or about April 22, 1992, affirmed.