OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant has filed a motion pursuant to CPL 440.10 (1) *326 (h) to vacate the judgment of conviction for attempted murder in the first degree (Penal Law § 125.27 [1] [a] [i]), rendered by a jury on June 2, 1988, on the ground that he was denied the constitutional right to the effective assistance of counsel at trial. (US Const 6th, 14th Amends; NY Const, art I, § 6.) The defendant was represented at trial by two people. One of these was an imposter, never educated in the law or admitted to practice in this or any other State. The other, an attorney admitted to practice before the Bar of the District of Columbia, was admitted pro hac vice on motion of the imposter to represent the defendant on this indictment. Therefore, the defendant argues that he was deprived of the actual assistance of counsel in two ways: by a nonlawyer’s appearance at trial as cocounsel for the defendant, and by the defect in the attorney’s pro hac vice admission based as it was on the motion of the nonlawyer. The defendant contends either defect requires vacating the resulting guilty verdict as a matter of law.
THE FACTS
The defendant was charged with attempted murder in the first degree, assault in the second degree, and criminal possession of a weapon in the second and third degrees. The indictment arose from an encounter between the defendant and two members of the street crimes unit, at Broadway and West 159th Street in New York County on November 17, 1987 at about 11:00 p.m. At arraignment on the indictment an attorney appointed by the Appellate Division represented the defendant. Subsequently, the defendant retained Mr. Blaine White, an attorney admitted to the Bar of the District of Columbia. Mr. White’s application to be admitted in this court pro hac vice was supported by the affidavit of Mr. Terrence Green, purportedly an attorney admitted before this court. In fact Mr. Green is not an attorney, although that was unknown to either the defendant or to Mr. White at the time of trial. It is not disputed that Mr. White prepared all of the defense papers filed in the case, with the exception of the order for a ballistics test which Mr. Green prepared. Mr. White and Mr. Green both were present throughout the trial. Examination of the trial transcript shows that Mr. White conducted the major portion of the defense including opening and closing statements, cross-examination of witnesses, objections to evidence, and consultation as to jury instructions without any participation by Mr. Green. Mr. Green’s participation consisted of *327 cosigning defense papers, cross-examining the People’s ballistics expert, preparing and examining the defense ballistics expert, making a single objection to testimony about the extent of tint in the windows of defendant’s jeep, physically delivering the defense requests to charge prepared by Mr. White, and concurring with Mr. White in a proposed limiting instruction on the use of evidence that money recovered from the defendant at the time of his arrest was vouchered and eventually returned to the defendant.
At trial the victim of the attempted murder, Officer Negus, testified that the officers stopped a jeep driven by the defendant, apparently on suspicion that the two occupants were selling drugs from the jeep. Officer Negus became concerned for his safety while asking the defendant to produce his license and registration. The officer directed the defendant out of the jeep. As the defendant emerged from the jeep, he kept his back to the officer and sidestepped toward the rear of the jeep while reaching toward the front of his waist. After warning the defendant to remove his hands, Officer Negus reached around the defendant and felt the handle of a gun on the left side of the defendant’s waist. Before the officer could remove the gun, the defendant swung around and struck Officer Negus in the head with his elbow, knocking the officer off balance. The defendant then produced a gun, pointing it in the direction of Officer Drogin on the opposite side of the jeep. When Negus warned Drogin, the defendant turned the gun on Negus, pointing it at the officer’s head. As Negus tackled the defendant, knocking him into the jeep, he heard a loud metallic click very close to his ear. The defendant then threw the gun behind him toward a building. Negus and the defendant struggled until the officer subdued the defendant at gunpoint. Officer Negus recovered a loaded revolver from the building line. He opened the cylinder and found that the cartridge under the firing pin had a dented primer. Officer Drogin testified consistently with Officer Negus, except that Drogin never heard the metallic click although he saw the gun. Officer Negus’ patrol supervisor testified that he responded to the officers’ call for assistance and saw Officer Negus recover the gun from the building line.
A ballastics expert called by the People testified that he found both the gun and ammunition operable. As to the indented cartridge, he testified that the indentation could have been caused by any hard object and was not "deep where a firing pin would cause a deep indent”. He also testified about *328 the danger of striking a loaded cartridge with any hard object. He described ways in which a gun could misfire, including insufficient pressure on the trigger which could cause a firing pin to indent the primer without setting it off. The defense called a ballistics expert who also testified, under examination by Mr. Green, that the indentation could have been caused by any tool and was not identifiable as the mark of a firing pin. However, the defense expert testified that a misfire would necessarily have made a larger impression on the cartridge primer.
The defense essentially was that the officers lied and that defendant did not pull a gun on the police. However, Mr. White also argued in summation that both the prosecution and defense experts concurred that the indentation on the bullet primer could not be said with any certainty to have been caused by the firing pin of a gun. The People also conceded this point in their summation. Specifically, Mr. White argued "I submit to you, ladies and gentlemen, as [both experts] said, this mark could have been made by anything, and I submit to you that it was not made by this hammer on this gun in the hands of Mr. Leslie as he attempted to shoot officer Negus, because, ladies and gentlemen, that never happened”. During its deliberations, the jury requested to rehear the testimony of Officers Negus and Drogin. The counts were submitted to the jury in the alternative and the defendant was convicted of attempted murder. Mr. White also represented the defendant at sentencing.
Mr. Green’s deception was discovered when the defendant, after sentence was imposed, filed a complaint about Mr. Green with the First Judicial Department’s disciplinary committee.
THE LAW
Denial of the effective assistance of counsel is always an error of constitutional dimension. (Strickland v Washington, 466 US 668, 691-692 [1984].) The Court of Appeals, although declining to adopt the harmless error analysis of Strickland,[1] *329 has held that errors of counsel do not amount to ineffective assistance under the State Constitution unless they deprive the defendant of meaningful representation. (People v Baldi, 54 NY2d 137, 151 [1981].) On the other hand, even the apparently competent representation of a criminal defendant by a nonlawyer is constitutionally ineffective as a matter of law. (People v Felder, 47 NY2d 287, 295-296 [1979]; Solina v United States, 709 F2d 160 [2d Cir 1983].) This distinction inheres in the role defense counsel plays in the adversarial adjudicative process. Where the defendant has received the assistance of counsel for the defense, there is "a strong presumption” that the assistance rendered was effective, and the defendant must overcome this presumption in challenging the verdict. (Strickland v Washington, supra, 466 US, at 689; United States v Cronic, 466 US 648, 658 [1984]; see, People v Rivera, 71 NY2d 705, 709 [1988].) The converse presumption is compelled where the defendant has not been represented by "counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice.” (Cuyler v Sullivan, 446 US 335, 343 [1980]; Gideon v Wainwright, 372 US 335, 344 [1963]; see, United States v Cronic, supra, at 659.) Only a person educated, tested and duly admitted to practice as an attorney may be presumed to have provided such counsel. (People v Felder, 47 NY2d 287, 295-296 [1979], supra; United States v Novak, 903 F2d 883 [2d Cir 1990].) A verdict obtained without such educated representation is presumptively unreliable as a matter of law. (People v Felder, supra; United States v Cronic, supra, at 659.) Consequently, the burden of proof allocated to the defendant who claims a denial of the effective assistance of counsel depends upon the nature of the alleged denial. (See, Strickland v Washington, supra, at 692-693; People v Margan, 157 AD2d 64, 66 [2d Dept 1990], supra.)
A complete denial of the assistance of counsel at any critical stage of the criminal proceeding, whether actual or constructive as a result of State interference with counsel’s ability to conduct a defense, requires a conclusive presumption of prejudice to the defendant. (See, Powell v Alabama, 287 US 45 [1932]; People v Hilliard, 73 NY2d 584 [1989]; United States v Cronic, supra, at 659-660; Strickland v Washington, supra, at 692.) Such circumstances "are so likely to prejudice the ac *330 cused that the cost of litigating their effect in a particular case is unjustified” (United States v Cronic, supra, at 658; see, People v Felder, supra, at 296) and a per se rule of error applies which allots no burden to the defendant beyond establishing the denial of counsel.
Where defense counsel is burdened by an actual conflict of interest, a similar, though more limited presumption of prejudice applies. In such instances, prejudice is presumed if the defendant demonstrates that an actual conflict of interest existed and operated to affect adversely the adequacy of counsel’s performance. (People v Alicea, 61 NY2d 23, 30-31 [1983]; People v McDonald, 68 NY2d 1, 11-12, and n 5 [1986]; People v Winkler, 71 NY2d 592, 597-598 [1988]; Cuyler v Sullivan, 446 US 335, 349-350 [1980], supra.) This "is not quite the per se rule” (Strickland v Washington, supra, at 692; see, United States v Cronic, supra, at 659; Cuyler v Sullivan, supra, at 349-350) since the defendant bears a burden of persuasion. This modified per se rule precludes inquiry into the actual effect of counsel’s conflict of interest upon the verdict, since the subtle and pervasive influence of a conflict defies such analysis and justifies a presumption of prejudice. (People v Mattison, 67 NY2d 462, 470 [1986]; People v Winkler, 71 NY2d, supra, at 597 ["a contingent fee arrangement may exert an insidious and potentially permeating affect on the proceedings and the professional relationship”].) However, the defendant must demonstrate that an actual conflict of interest potentially "affected the defense in such a way, based on all relevant aspects of the representation directly or indirectly rooted in that impediment, that meaningful representation was not supplied under the Federal and State Constitutions”. (People v Winkler, supra, at 597; see, People v McDonald, supra, 68 NY2d, at 11, n 5.)
Finally, where the defendant claims that counsel’s performance was deficient in some particular, the defendant bears the burden to demonstrate that the performance fell below a standard of reasonable competence and that counsel’s errors were not due to strategic or other legitimate explanations consistent with the conduct of a meaningful defense. (People v Rivera, 71 NY2d 705, 709 [1988], supra.) The defendant must be able to identify the particular manner in which counsel’s performance was deficient and to demonstrate that the deficiencies amounted to less than meaningful representation (see, People v Benn, 68 NY2d 941 [1986]). For example, defense counsel errors that are inconsistent with a plausible defense *331 (People v Baldi, 54 NY2d 137, 151 [1981], supra); and omission to explain or to develop a recognizable theory of defense (People v Hewlett, 71 NY2d 841 [1988]) amount to constitutionally deficient representation. The defendant may show that there was no legitimate reason for omitting to pursue a specific defense tactic or that defense counsel failed for illegitimate reasons to assert defense claims. (People v Rivera, supra, at 709.) Such illegitimate reasons would include an actual conflict of interest. (People v Winkler, supra, 71 NY2d, at 597.)
If the per se rule is applied, the defendant is entitled to a new trial as of right. If a less exacting standard is adopted, the defendant must bear some burden of persuasion as to the effect of the nonlawyer’s participation in the proceedings, and the court must determine whether the effect was to deny the defendant the full benefit of counsel within the meaning of the State or Federal Constitutions.
Two courts have considered the unusual circumstance of joint representation of a single defendant by an attorney and by an imposter. Both declined to apply the per se presumption of error where the attorney-in-fact was present at every critical stage and actively participated in the defense. (Higgins v Parker, 354 Mo 888, 191 SW2d 668, 670 [1945]; United States v Novak, 903 F2d 883, 890 [2d Cir 1990], supra.) In Higgins (supra, 354 Mo, at 890, 191 SW2d, at 670), the Supreme Court of Missouri anticipated the per se rule in regard to lay representation (see, People v Felder, 47 NY2d, supra, at 293) but found that the presence of the licensed attorney who "took an active part in the petitioner’s defense from the beginning to the end of the reception of evidence” satisfied the Sixth Amendment. In Novak, the Second Circuit stated that the active participation of a duly admitted attorney at all critical stages would be sufficient to protect the Sixth Amendment right, despite joint representation by an imposter, but found that the attorney-in-fact did not actively participate in the trial. This precedent is persuasive in light of the theoretical basis of the per se rule. Where the defendant has no legitimate representation, and that circumstance is without the defendant’s knowledge or consent, the constitutional mandate is not met and the resulting verdict is conclusively presumed to be unreliable. (People v Felder, supra.) On the other hand, where the defendant has the assistance of educated counsel, the simple presence of a lay representative does not necessarily undermine the integrity of the process. (Higgins v Parker, supra; United States v Novak, supra; see also, *332 People v Cox, 193 Cal App 3d 1434, 1439, 239 Cal Rptr 40 [1987] [declining to apply a per se rule where the defendant’s jointly tried codefendant was represented by an imposter, even though counsel pursued and cooperated in presenting a unified defense].) The participation of an educated lawyer who has conferred with the ersatz cocounsel and has concurred in the defense strategy lends some assurance to the adversarial process that is lacking where the defendant’s only representative is a nonlawyer.
It is equally apparent that the participation of a nonlawyer in the process which results in a judgment adverse to the defendant cannot be ignored simply because the defendant also was represented by an attorney-in-fact. The Constitution requires more than the mere presence of counsel. (United States v Cronic, 466 US, supra, at 654-655; Holloway v Arkansas, 435 US 475, 489 [1978].) The strong presumption that the defendant received effective legal assistance based upon representation by a duly licensed attorney is undermined to the extent that the nonlawyer conducts the defense. To attribute the layperson’s conduct to the attorney under a theory of agency or otherwise would be an impermissible legal fiction, since the attorney as well as the defendant has been deceived.[2] To consider the coincidental effectiveness of the nonlawyer would diminish the protection afforded by the Sixth Amendment (People v Felder, supra). For these reasons, it is inappropriate to impose on the defendant a burden to demonstrate that the nonlawyer committed specific errors or engaged in conduct inconsistent with a plausible defense.
Moreover, considerations underlying both the per se rule as applied to representation by a nonlawyer and the modified presumption applied to conflicts of interest, pertain equally to the undisclosed participation of a layperson as cocounsel in the preparation and conduct of the defense. Courts recognize that fear of detection may impose an impediment to an aggressive defense by a layperson posing as an attorney, and thus deprives the defendant of effective assistance of counsel as much by what the imposter fails to do, as by the obvious ineptitude of what he does. (Solina v United States, 709 F2d, *333 supra, at 164.) Similarly, among potential impediments to meaningful representation presented by an actual conflict of interest is counsel’s decision to refrain from legitimate defense tactics due to fealty to interests adverse to the interests of the defendant. (Holloway v Arkansas, supra, at 489-490; see, People v McDonald, supra, 68 NY2d, at 12 [failure to cross-examine the complainant, defendant’s employer who was also defense counsel’s client, about defendant’s employment history].) Consequently, in each of these contexts the effect of the impediment to meaningful representation may not be apparent on the face of the record. The subtle and pervasive influence of the nonlawyer’s fear of detection or of the lawyer’s conflicting interest make it both difficult and unprincipled to parse the record to measure the precise effect upon the proceedings. (People v Felder, supra; People v Winkler, supra, 71 NY2d, at 597; see, Strickland v Washington, supra, 466 US, at 692; see, Javor v United States, 724 F2d 831, 835 [9th Cir 1984] [effect of attorney’s sleeping through a substantial portion of defendant’s trial would not be susceptible to measurement since defendant was prejudiced "more by what was not done than by what was done”]; but see, People v Tippins, 173 AD2d 512 [2d Dept 1991] [defense attorney provided effective assistance despite sleeping spells].)
The active participation of a nonlawyer in the defense may lead the attorney-in-fact to refrain from personally performing tasks essential to an adequate defense. It would be credulous to deny that the active participation of the nonlawyer may lead the defendant’s only legitimate representative, the admitted lawyer, to forego preparing aspects of the case that warrant the attention of an attorney, or may adversely affect the extent of the attorney’s participation in the trial. In other words, the participation of the unlicensed, uneducated representative may constitute an impediment to counsel’s effective assistance under the circumstances. Moreover, it may be difficult to measure precisely the extent to which the participation of a nonlawyer has compromised the defense where the nonlawyer has participated on an equal footing with the attorney in preparing the defense. Therefore the court concludes that, as in the case of an actual conflict of interest, the nonlawyer’s role in the proceeding must be presumed to have prejudiced the defense to the extent that the defendant can demonstrate its adverse effect upon the effectiveness of his legitimate representative. Accordingly, the defendant’s burden in this context is to show that the participation of the nonlaw *334 ver potentially "affected the defense in such a way, based on all relevant aspects of the representation directly or indirectly rooted in that impediment, that meaningful representation was not supplied under the Federal and State Constitutions”. (People v Winkler, supra, at 597.)
In this case, the defendant has failed to meet the burden of showing that the presence and participation at trial by the imposter had an actual adverse effect upon the defense presented by his attoney-in-fact. White, the attorney-in-fact, at all times remained in the courtroom and was seeking to protect his client’s interests. (Cf., People v Margan, 157 AD2d 64, supra; United States v Novak, supra, 903 F2d, at 890.) Although it is not dispositive, the court notes that the defendant recruited Mr. White to come to New York and conduct the defense on his behalf. It is apparent that the defendant, Green and White contemplated that White would be the defendant’s principal representative. Defendant does not allege any disagreement between White and Green as to defense strategy. Defendant does not suggest that Green impeded White in the presentation of the defense. As previously noted it was White who opened to the jury, conducted the cross-examination of the officers who were present at the scene, made the defense objections, prepared the defense requests to charge, and delivered the defense summation. The relevant aspects of the defense representation directly or indirectly rooted in Green’s participation were confined without significant exception to the ballistics evidence.
The People’s ballistics evidence was both equivocal and nonincriminatory. The People’s expert testified that he could not say with any reasonable degree of certainty that the indentation on the cartridge found in the gun was made by a firing pin. Assuming as we must, that the jury held the People to their appropriate burden of proof of the facts, this testimony did not damage the defense. Under these circumstances competent counsel could have chosen not to cross-examine the expert. The defendant has not suggested that Green’s cross-examination in any way impaired White’s conduct of the defense. To the contrary, White relied upon the prosecution expert to buttress the defense argument in summation. Similarly, the testimony of the defense ballistics expert essentially corroborated the previous testimony by the People’s expert. The defendant does not suggest that Green’s participation in preparing this witness impeded White in developing the defense strategy or that White would have conducted the de *335 fense differently in the least, had he personally prepared the defense expert to testify. Nor has the defendant asserted that Mr. Green engaged in any other conduct that affirmatively impeded Mr. White’s development or presentation of the defense. Consequently, the court finds the presence and limited participation of Mr. Green in the course of the defendant’s trial not to have had an actual adverse effect upon the conduct of the defense by Mr. White.
Finally, the court finds that Green’s sponsorship of White’s admission pro hac vice was a technical defect having no bearing on White’s moral character, qualification or competence to appear as defendant’s counsel. (See, People v Kieser, 79 NY2d 936 [Mar. 31, 1992] [representation of defendant by a New Jersey attorney, who was suspended for failure to pay Bar dues, and who failed to obtain admission pro hac vice before the courts of this State, did not deprive the defendant of his right to counsel].)
The defendant’s motion to vacate the judgment of conviction rendered June 2, 1988 is denied.

. The Supreme Court held that counsel’s ineffectiveness may constitute harmless error. (Strickland v Washington, 466 US 668, 693-695 [1984], supra; see, Perry v Leeke, 488 US 272, 280 [1989].) The Strickland prejudice test has not been adopted in New York. (People v Benn, 68 NY2d 941 [1986] [reserving decision on whether to apply the Strickland standard under the State Constitution]; compare, People v Vilardi, 76 NY2d 67, 74, n 3 [1990] [noting that the Court of Appeals has not adopted the Strickland prejudice test], with People v Margan, 157 AD2d 64, 66 [2d Dept 1990].) This court *329 assumes that the harmless error standard does not apply to ineffective assistance of counsel claims under the State Constitution.

. The court emphatically rejects any analogy between the presence of an imposter as cocounsel and the regulated supervision of law students or recent law graduates by attorneys duly licensed to practice before the court, pursuant to programs authorized by the Appellate Division. (Judiciary Law § 478; see generally, Annotation, Propriety and effect of law students acting as counsel in court suit, 3 ALR4th 358.)