Anthony LESLIE, Petitioner–
Appellant,

v.

Christopher ARTUZ, Superintendent,
Greenhaven Correctional Facility,
Respondent–Appellee.

No. 99–2680.

United States Court of Appeals,
Second Circuit.

Argued: June 12, 2000

Decided: Oct. 17, 2000

Robert J. Boyle, New York, New York, for Petitioner–Appellant.

Ellen Sue Handman, Assistant District Attorney, New York, New York (Robert M. Morgenthau, District Attorney for New York County, Morrie I. Kleinbart, Assistant District Attorney, New York, New York, on the brief), for Respondent–Appellee.

Before: KEARSE, SACK, and SOTOMAYOR, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Anthony Leslie, a New York State ("State") prisoner convicted of attempted murder, appeals from a judgment of the United States District Court for the Southern District of New York, Robert W. Sweet, *Judge*, dismissing his habeas corpus petition pursuant to 28 U.S.C. § 2254 (1994 & Supp. IV 1998) alleging, *inter alia*, that his Sixth Amendment right to counsel was violated because he was represented

at his state trial by a nonattorney. The district court denied the petition, ruling that there was no Sixth Amendment violation because Leslie was simultaneously represented by a bona fide attorney at all stages of the trial. Leslie challenges this ruling on appeal. He also contends that he was entitled to an evidentiary hearing as to whether his bona fide attorney knew that the nonattorney was not an attorney. Finding no basis for reversal, we affirm the district court's judgment.

## I.  BACKGROUND

The state criminal proceedings against Leslie arose out of his November 1987 encounter with New York City police officers John Negus and Ronald Drogin. According to the testimony of Negus and Drogin at trial, the officers observed a car being driven by Leslie in a suspicious manner. Negus identified himself as a police officer and asked Leslie for his license and registration; Drogin, on the passenger side, noticed that the car's lone passenger seemed unduly nervous. Drogin told Negus that something was wrong, and the officers ordered Leslie and the passenger out of the car.

As Leslie stepped out of the car, he kept his back to the officer, sidestepped toward the rear of the car, and repeatedly reached toward his waist. After warning Leslie to remove his hands from his waist, Negus reached over and felt the handle of a gun on Leslie's waist. Before Negus could remove the gun, Leslie elbowed him in the head, pulled out the gun, and pointed it toward Drogin. When Negus warned Drogin that Leslie had a gun, Leslie turned and pointed the gun at Negus's head. As Negus tackled Leslie and knocked him into the car, Negus heard a loud metallic click close to his ear. Leslie then tossed the gun, which landed on the other side of the street. After a struggle, Negus and backup officers restrained Leslie. They recovered the gun, which was loaded with six rounds; its hammer was closed. The bullet eventually recovered

from the firing chamber had a slight dent in its primer—the device that, when impacted by a gun's firing pin, ignites the explosive substance that propels the bullet.

### A.  The State Proceedings

Leslie was arrested and charged with, *inter alia,* attempted murder in the first degree. He retained two persons to represent him: Terence L. Green, who supposedly was licensed to practice law in New York but in fact was not, and Blaine A'mmon White, who was an attorney admitted in Pennsylvania and the District of Columbia, but not admitted in New York. Green filed a motion in New York Supreme Court for White's admission *pro hac vice* as co-counsel in Leslie's case. In the motion, Green represented that he was "an attorney duly admitted to practice in the Courts of the State of New York" (Motion of Terence L. Green dated February 11, 1988, unnumbered first paragraph), and that he would "accompany Mr. White at each and every stage of this proceeding" (*id.* ¶ 3). A supporting affidavit submitted by White described White's credentials and stated that "Terence L. Green, Esquire, a duly admitted practitioner before this Court will guide me at all stages of this proceeding" (Affidavit of Blaine A'mmon White dated February 10, 1988, ¶ 6).

The motion to admit White *pro hac vice* as Leslie's co-counsel was granted. Throughout Leslie's two-day trial, both Green and White represented Leslie.

The prosecution called a total of four witnesses, three of whom described events on the night of the arrest. Negus and Drogin testified to the incidents that had led them to approach Leslie's car and described Leslie's conduct thereafter; their testimonies were essentially the same, except that only Negus had heard the metallic click of the gun next to his head. Lieutenant Frank Scalafani, one of the officers who had arrived to help Negus and Drogin restrain Leslie on the night in question, also testified. The defense theory was

that Leslie had never drawn a gun and that the officers were not telling the truth. Expounding on that theory, White delivered the defense opening and closing statements, and he cross-examined Negus, Drogin, and Scalafani.

The prosecution's other witness was Robert Cotter, a ballistics expert who testified that the gun and ammunition were operable, but that he could not determine the cause of the shallow indentation in the bullet's primer. Cotter stated that the indentation was not sufficiently deep for him to say that it was caused by the gun's firing pin. Green cross-examined Cotter, primarily questioning his qualifications as a ballistics expert and bringing out that the gun had not been dusted for fingerprints. Green also examined the only defense witness, Robert Breglio, a ballistics expert whose testimony focused on the denting of the primer. Breglio testified that the dent was not identifiable as a mark of the firing pin because a misfire would have left an impression in the primer as deep as if the bullet had been fired. In his summation, White pointed out that both the prosecution and defense experts agreed that the indentation on the bullet primer could not be said with any certainty to have been caused by the gun's firing pin. The State, in its own summation, conceded that point.

The jury convicted Leslie of attempted murder, and he was sentenced to a term of 25–years–to–life imprisonment.

In 1990, Leslie wrote a letter to the Disciplinary Committee of the Appellate Division, First Department, to complain about Green. By letter dated April 26, 1990, the Committee informed Leslie that Green was not licensed to practice law in New York. Leslie later learned that Green had never received a law degree or been admitted to the bar of any state.

In January 1992, Leslie filed a *pro se* motion in the trial court to vacate the judgment of conviction on the ground that Green's imposture had denied Leslie the effective assistance of counsel and preju-

diced his defense. The Legal Aid Society, which then had been assigned to represent Leslie on the direct appeal from his conviction, submitted a supplemental memorandum in support of Leslie's *pro se* motion to vacate. In an opinion dated April 17, 1992, the trial judge denied the motion, holding, first, that there was no *per se* violation of Leslie's right to counsel because Leslie had been represented by White, a bona fide attorney, throughout the trial and sentencing. The court noted that "the defendant recruited Mr White to come to New York and conduct the defense on his behalf," and that it was "apparent that the defendant, Green and White contemplated that White would be the defendant's principal representative." *People v. Leslie*, 154 Misc.2d 325, 334, 586 N.Y.S.2d 197, 204 (1992) (*"Leslie I"*). The court found that White had performed that function. Noting that "[t]he defense essentially was that the officers lied and that defendant did not pull a gun on the police," *id.* at 328, 586 N.Y.S.2d at 200, the court found that White alone had prepared and presented that defense:

> It is not disputed that Mr White prepared all of the defense papers filed in the case, with the exception of the order for a ballistics test which Mr Green prepared. Mr White and Mr Green both were present throughout the trial. Examination of the trial transcript shows that Mr White conducted the major portion of the defense including opening and closing statements, cross-examination of witnesses, objections to evidence, and consultation as to jury instructions without any participation by Mr Green. Mr Green's participation consisted of co-signing defense papers, cross-examining the People's ballistics expert, preparing and examining the defense ballistics expert, making a single objection to testimony about the extent of tint in the windows of defendant's jeep, physically delivering the defense requests to charge prepared by Mr White, and concurring with Mr White in a proposed

limiting instruction on the use of evidence that money recovered from the defendant at the time of his arrest was vouchered and eventually returned to the defendant.

*Id.* at 326–27, 586 N.Y.S.2d at 199.

In addition, the trial court found that Green's performance of his limited role at trial did not impede White's performance. "Defendant does not allege any disagreement between White and Green as to defense strategy. Defendant does not suggest that Green impeded White in the presentation of the defense." *Id.* at 334, 586 N.Y.S.2d at 204. Although noting that the active participation of an imposter might in some circumstances interfere with effective representation by a genuine attorney acting as co-counsel, and stating that prejudice should be presumed to the extent that the defendant could show an adverse effect, the court found no indication in the record of any such hindrance in Leslie's case.

The People's ballistic evidence was both equivocal and nonincriminatory. The People's expert testified that he could not say with any reasonable degree of certainty that the indentation on the cartridge found in the gun was made by a firing pin. Assuming as we must, that the jury held the People to their appropriate burden of proof of the facts, this testimony did not damage the defense. Under these circumstances competent counsel could have chosen not to cross-examine the expert. The defendant has not suggested that Green's cross-examination in any way impaired White's conduct of the defense. To the contrary, White relied upon the prosecution expert to buttress the defense argument in summation. Similarly, the testimony of the defense ballistics expert essentially corroborated the previous testimony by the People's expert. The defendant does not suggest that Green's participation in preparing this witness impeded White in developing the defense strategy or that White would have

conducted the defense differently in the least, had he personally prepared the defense expert to testify. Nor has the defendant asserted that Mr Green engaged in any other conduct that affirmatively impeded Mr White's development or presentation of the defense. Consequently, the court finds the presence and limited participation of Mr Green in the course of the defendant's trial not to have had an actual adverse effect upon the conduct of the defense by Mr White.

*Id.* at 334–35, 586 N.Y.S.2d at 204.

The trial court also found that at the time of trial, the fact that Green was not an attorney was not known to White. *Id.* at 326, 586 N.Y.S.2d at 199. It further found that the fact that White's admission to represent Leslie *pro hac vice* had been initiated by the motion of Green was not an error of substance:

Green's sponsorship of White's admission pro hac vice was a technical defect having no bearing on White's moral character, qualification or competence to appear as defendant's counsel.

*Id.* at 335, 586 N.Y.S.2d at 204–05.

Leslie appealed the denial of his motion, and that appeal was consolidated with his appeal from the judgment of conviction. In 1997, the Appellate Division affirmed both the conviction and the order denying the motion to vacate, endorsing the findings and conclusions of the trial court, and the New York Court of Appeals denied leave to appeal. *See People v. Leslie*, 232 A.D.2d 94, 662 N.Y.S.2d 761 (1st Dep't) ("*Leslie II*"), *lv. denied*, 91 N.Y.2d 875, 668 N.Y.S.2d 574, 691 N.E.2d 646 (1997).

### B. *The Present Proceeding*

Leslie commenced the present habeas action in 1998 alleging, to the extent pertinent to this appeal, that Green's imposture deprived him of his Sixth Amendment right to the effective assistance of trial counsel. After independently reviewing the state-court record, the district court dismissed the petition in an opinion report-

ed at 72 F.Supp.2d 267 (1999) ("*Leslie III*"), noting that Leslie was "represented by a bonafide lawyer throughout the entire trial." *Id.* at 281. The court stated that

> [h]ad Green been Leslie's sole, or even primary, representative at trial, or had White not been present during selected portions of the trial, a more difficult question would be presented. However, as Judge Rothwax—the presiding judge at trial—observed in *Leslie I*, and as an independent review of the record makes clear, White was both present throughout the trial and assumed a preeminent role in Leslie's defense.

*Id.* at 280–81. The court distinguished the present case from *United States v. Novak*, 903 F.2d 883 (2d Cir.1990), in which a defendant was represented by both a local bona fide attorney and a visiting imposter, but local counsel did not actively represent the defendant at trial. The district court found that, unlike the defendant in *Novak*, "Leslie was vigorously represented by a lawyer throughout all critical stages of his trial." *Leslie III*, 72 F.Supp.2d at 281.

The district court adopted the state trial court's finding that White was unaware that Green was not an attorney and concluded that White had no conflict of interest.

> Other than a few conclusory assertions that White could have been aware that Green was not licensed, contrary to the trial judge's finding that White was unaware that Green was an imposter, Leslie has not provided the Court with anything indicating that the conflict rule first articulated in *Solina* [*v. United States*, 709 F.2d 160, 168–69 (2d Cir. 1983) ] should be applied in this case. Furthermore, Leslie has failed to convince the Court that reversal is required under the general conflict-of-interest standard set forth in *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

> That White was himself not admitted in New York, and that his *pro hac vice* admission was secured by virtue of an application by Green, does not change this analysis. As a number of courts have held, the rules set forth in *Novak* and *Solina* do not apply where the defect in an attorney's admission is *de minimis* or where an attorney is licensed in foreign jurisdictions.

*Leslie III*, 72 F.Supp.2d at 281.

The court denied Leslie's habeas petition, which asserted various additional claims, in its entirety. The court granted a certificate of appealability "on the limited question of whether the nature of Green's representation violated Leslie's Sixth Amendment rights." *Id.* at 283. This appeal followed.

## II. DISCUSSION

On appeal, Leslie argues that the state court erred in finding that White was responsible for the bulk of the defense and that the district court erred in adopting that finding; he contends that an evidentiary hearing is required in order to determine Green's role in the defense. Leslie also contends that he was entitled to a hearing into whether White knew that Green was not a licensed attorney. For the reasons that follow, we disagree.

### A. The Challenge to the State Court's Factual Findings

A state prisoner seeking habeas corpus relief in federal court faces significant obstacles. The federal habeas statute provides, *inter alia*, that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The statute also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

■ In the present case, the state court adjudicated Leslie's Sixth Amendment claim on its merits, making findings of fact that are presumed to be correct. The overarching findings were that White was present throughout the trial and that he played the dominant role in representing Leslie. Those findings were made by the judge who had presided over the trial and who thus possessed first-hand familiarity with the roles of the various participants at trial. In addition, the trial judge indicated in *Leslie I* that before making his findings he had renewed his familiarity with the record.

Leslie has pointed to no evidence to rebut the presumption that the state court's findings are correct. He apparently does not dispute that White was present throughout his trial, but rather challenges the finding that White represented him at every critical point, arguing that Green examined the sole defense witness and that White examined only one more witness than did Green. That quantitative analysis is specious. In light of Leslie's defense position that in fact he did not draw a gun on the officers, the testimony of the officers who were involved in Leslie's arrest was plainly the crucial aspect of the case. It is undisputed that it was White, not Green, who cross-examined all three of those officers. It was also White who, *inter alia*, delivered the defense's opening and closing statements to the jury, made virtually all of the defense objections to evidence, prepared the defense's requests to charge, and conferred with the court on the "jury instructions without any participation by Mr Green." *Leslie I*, 154 Misc.2d at 326, 586 N.Y.S.2d at 199. The trial court noted that it was "not disputed" that, except for one order prepared by Green for a ballistics test, "White prepared all of the defense papers filed in the case. . . ." *Id.*

Green's role, in contrast, consisted primarily of his cross-examination of Cotter, the State's ballistics expert, whose testimony was only "equivocal and nonincriminatory," *Leslie I*, 154 Misc.2d at 334, 586 N.Y.S.2d at 204. That assessment of the evidence can hardly be termed unreasonable. Cotter was not a witness to the events; and as a ballistics expert, he testified, favorably to Leslie, that he could not say that the slight dent in the bullet primer had been caused by an attempt to fire the gun. He testified that "[a]ctually, anything could have caused this indent. . . ." (Leslie's state-court petition to vacate judgment at 39.) Given the harmlessness of the ballistics evidence, the trial court found that competent counsel could well have elected to forgo cross-examination of Cotter entirely. The only other witness examined by Green was the defense's own ballistics expert; considering the general-denial nature of Leslie's defense and the plain ineffectiveness of the State's ballistics evidence, presentation of the defense ballistics expert might well have been forgone too. The witnesses examined by Green were thus inconsequential; but in any event, White was present as Leslie's lead attorney throughout the questioning of these witnesses.

Although Leslie contends that the state court should have convened an evidentiary hearing into White's role in the trial, we cannot see that Leslie made any showing sufficient to warrant such a hearing. His own petition stated that White had "[u]ndertak[en Leslie's] defense as primary counsel" (Leslie's state-court petition to vacate judgment at 11), and he presented nothing factual to suggest that White had not performed that function. The trial

court's findings as to White's role as lead attorney were confirmed by the district judge, who stated in *Leslie III* that he had made an independent review of the record, and that it was clear that White was both present throughout the trial and played the preeminent role in Leslie's defense.

In sum, Leslie made no factual proffer sufficient to require an evidentiary hearing as to White's role, and pointed to no evidence, much less to clear and convincing evidence, sufficient to overcome the presumption of correctness accorded the trial judge's findings that White represented Leslie at all critical stages of the trial.

### B. *The Merits of the Denial–of–Counsel Claim*

Under § 2254 as amended, a federal court may grant habeas corpus relief to a state prisoner only if the state-court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The terms of this section were interpreted by the Supreme Court in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

■ "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' " refers only to cases decided by the Supreme Court, as opposed to other courts, *Williams v. Taylor,* 529 U.S. at ——, 120 S.Ct. at 1523, and "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision," *id.*

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*

■ The Sixth Amendment, which applies to the states through the Fourteenth Amendment, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This provision gives the accused the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including the pretrial stages, trial, and sentencing. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That right includes the right to representation that is free from conflicts of interest. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 481, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). To protect the defendant's right to conflict-free counsel, the trial court must initiate an inquiry when the record suggests an actual conflict of interest by counsel. *See Wood v. Georgia,* 450 U.S. at 273–74, 101 S.Ct. 1097.

■ Application of these principles leads us to affirm the decision of the district court dismissing Leslie's habeas petition. The state court's refusal to vacate Leslie's conviction was not "contrary to" clearly established Supreme Court jurisprudence, for no Supreme Court case has dealt with whether the rights of an accused were violated when he was represented at trial by both a bona fide attorney and a nonattorney.

■ Nor, in light of our own past interpretations of Supreme Court rulings on the right to counsel, can we conclude that

the state court's decision was an "unreasonable application" of the Supreme Court's Sixth Amendment jurisprudence. This Court has concluded that an accused's rights are violated if he is represented at trial only by a person who has never been approved as competent to practice law, *see, e.g., Solina v. United States,* 709 F.2d 160, 167 (2d Cir.1983), a conclusion we found to be "required" by "the teachings of the Supreme Court," *id.* at 168. We have reached the same conclusion where the accused was represented by a person who gained admission to practice through a fraudulent representation as to his qualifications, *see United States v. Novak,* 903 F.2d at 886, or was represented only by a duly licensed attorney who had actual conflicts of interest that adversely affected his performance, *see United States v. Levy,* 25 F.3d 146, 155–58 (2d Cir.1994). We have also indicated, however, that a person in circumstances similar to those of Leslie would not have been denied his Sixth Amendment right. In *United States v. Novak,* the defendant was represented not only by a person who had gained admission to the bar by means of fraud as to his qualifications, but also by a local attorney who was duly licensed to practice. We held that the right to counsel had been violated because the record revealed that local counsel had been "excused from daily attendance during the trial" and was "absent during most of the trial," 903 F.2d at 891 (internal quotation marks omitted). But we also noted that "[i]f [local counsel had] provided Novak with effective assistance at all critical stages of the proceedings, Novak's Sixth Amendment right would have been protected." *Id.* at 890.

Given this view of the teachings of the Supreme Court, and given the state court's unimpeached finding that the duly licensed White represented Leslie at all critical stages of the trial, the state court's conclusion that Leslie's Sixth Amendment rights were not violated was not an unreasonable application of Supreme Court jurisprudence.

Finally, we note that Leslie contends that White may have had a conflict of interest because he may have known that Green was not admitted to the bar; Leslie contends that the court could not properly find that White had no such knowledge without conducting an evidentiary hearing. Our review of the record persuades us that Leslie did not advance that theory in support of his petition, did not request a hearing as to White's knowledge, and made no showing that would have warranted a hearing on that question had he requested it. Further, the state court's finding that White had no such knowledge was a reasonable inference from statements that Leslie made in his petition. The petition made it clear that neither Green nor White was involved in the retention of the other. Leslie stated that, after his arrest, he had retained Green to represent him.

> At the same time, [Leslie's] family felt he should be represented by counsel with whom they were familiar. Consequently, the services of Blaine A'mmon White, an[ ] attorney duly qualified and admitted to practice law in the District of Columbia

were enlisted. (Leslie's state-court petition to vacate judgment at 11.) Nothing in this description—or in any other part of the record—remotely suggested either that White knew or knew of Green before Leslie brought the two together, or that there was any basis for believing that White knew Green was not an attorney. The purely hypothetical argument that if White had had such knowledge he would have had a conflict of interest does not provide a sufficient basis to require the court to hold an evidentiary hearing.

### CONCLUSION

We have considered all of Leslie's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.